**D.E.W., INC., Plaintiff–Appellee,**

v.

**LOCAL 93, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, et al., Defendants–Appellants.**

**No. 91–5519.**

United States Court of Appeals,
Fifth Circuit.

April 3, 1992.

Rehearing Denied April 30, 1992.

---

Stephen Edward Price, Freedman & Hull, P.C., Houston, Tex., for Local 93 Intern. Union of North America, et al.

Terry S. Bickerton, Arthur C. Nicholson, III, Thomas R. Giltner, Cox & Smith, Inc., San Antonio, Tex., for D.E.W., Inc.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Plaintiff/appellee, D.E.W., Inc. ("D.E.W."), a San Antonio general contractor in the construction business, brought suit against the Southern Texas Laborers' District Council Health & Welfare Trust Fund, the Laborers' National Pension Fund, and the Southern Texas Laborers' District Council Training Program (the "Laborers' Funds" or "Funds"), multi-employer trust funds administered by defendant American Benefit Plan Administrators, Inc. (Administrators), as well as Local Union 93 and the Laborers' International Union of North America. D.E.W. sought a declaratory judgment under 28 U.S.C. § 1337 as a federal question involving the application of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). The judgment was sought as to liability under an adoption agreement. The parties agree that the employer was required to make contributions to the Laborers' Funds for its union employees. D.E.W. asserts, however, that it had no obligation under the agreement to contribute for its non-union employees. The district court agreed with D.E.W. and

granted a summary judgment motion, ruling that D.E.W. was not legally obligated to make benefit contributions to the enumerated Funds for its non-union laborers. In its final judgment, the district court also awarded D.E.W. its reasonable attorneys' fees, costs, and interest.[1] We reverse and grant summary judgment in favor of the Laborers' Funds.

## I. FACTS AND PRIOR PROCEEDINGS

On September 27, 1984, D.E.W. entered into an adoption agreement[2] with the Laborers' Funds under which D.E.W. undertook to make contributions to the Funds[3] based on each hour the covered employees worked. D.E.W. made the contractually obligated contributions only on behalf of its union employees to the Laborers' Funds. An audit was conducted of D.E.W.'s payroll records by the Administrators as to its contributions to the adopted Funds. The audit resulted in the Administrators making a demand on D.E.W. for $124,683.28 for contributions they concluded were owed to the Laborers' Funds for D.E.W.'s non-union employees. D.E.W. disputed the demand, claiming that it was not required to contribute benefit payments to the Laborers' Funds for its non-union employees.[4] It brought this suit for a declaratory judgment to that effect. After the civil action was filed, the Funds filed an amended answer and counterclaim asserting that, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 et seq., D.E.W. had breached the agreements by D.E.W. to pay contributions to the Funds on behalf of all of its laborers. After D.E.W. and the appellants submitted a joint pretrial order, including several stipulations, both parties filed summary judgment motions. The district court granted D.E.W.'s motion, concluding that the adoption agreement was unambiguous and a reading of the agreement compelled only one reasonable construction—that the contributions to the Laborers' Funds were due only for union workers and that the defendants take nothing on their counterclaim. The court subsequently entered a final judgment awarding D.E.W. $32,169.29 as its reasonable attorneys' fees, plus costs, and interest.

## II. DISCUSSION

On appeal, the Laborers' Funds raise one definitive issue: whether the district court erred in granting summary judgment and entering final judgment in favor of D.E.W.? According to the Funds, by entering into the adoption agreement D.E.W. agreed to adopt the terms of the Multi–Employer Union Trust Fund Agreements and agreed to make contributions to the

1. D.E.W. originally sought a declaratory judgment regarding its rights under two adoption agreements in which it had entered: a September 24, 1984 agreement with the Texas Iron Workers Health, Benefit & Pension Funds and a September 27, 1984 agreement with the Laborers' Funds. In making its determination, the district court noted the uniformity and continuity created by similarly construing both adoption agreements. According to the court, the Laborers' Funds' reading of the adoption agreement strained credulity in that D.E.W. would have entered into "two diametrically opposed agreements within three days of each other on the same subject matter." It may raise some doubt that the district court made such an assessment at the outset since the two agreements are wholly different. Ultimately, although the district court's decision was applicable to both agreements, D.E.W. reached a settlement with the Iron Workers.

2. An adoption agreement is an agreement independent of a collective bargaining agreement under which in this case the employer individually assumed and agreed to adopt the terms of multi-employer union trust funds agreements and agreed to make contributions to the funds for covered workers. An adoption agreement often references an underlying collective bargaining agreement, as it did in this case, though it does not have to do so.

3. The Funds had been established pursuant to the provisions of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 et seq., and the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and are administered by the trustees of the Laborers' Funds.

4. D.E.W. asserts that it has made contributions to an insurance benefit fund for its non-union employees. The record does not reflect the nature or amount of any such contribution.

Laborers' Funds for its employees, regardless of union affiliation.

█ We review a summary judgment de novo, applying the same standard as the district court. *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 963 (5th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). In reviewing a grant of summary judgment, this Court must determine if there are any genuine issues of fact material to the resolution of the case in dispute, and if not, whether under the undisputed facts the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990) (per curiam). A mere scintilla of evidence is insufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). We must view the evidence and draw all inferences, however, in the light most favorable to the non-moving party.

The parties are in agreement that there is no genuine issue as to any material fact regarding D.E.W.'s contractual obligations to make contributions to the Laborers' Funds. According to the parties, the adoption agreement is unambiguous. Both parties contend that no genuine issue exists, and both parties assert that the adoption agreement is unambiguous. Yet, the interpretations of the contract by the parties result in diametrically opposed conclusions as to the obligation to contribute for non-union laborers.

█ The Funds counterclaimed against D.E.W. under, inter alia, section 301(a) of LMRA, 29 U.S.C. § 185(a). *United Paperworkers Int'l Union, AFL–CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1255–56 (5th Cir.1990). Federal substantive law governs the interpretation and enforcement of contracts under section 301(a). *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). In interpreting a labor contract, " 'traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies.' " *United Paperworkers Int'l Union*, 908 F.2d at 1256 (citations omitted).

█ The construction of the adoption agreement, and the interpretation of its language, is pivotal in this case. The interpretation of this adoption agreement, as with any contract, is a question of law. *Id.* The determination of whether a contract is ambiguous is also a question of law. *Richland Plantation Co. v. Justiss–Mears Oil Co.*, 671 F.2d 154, 156 (5th Cir.1982). A contract is not ambiguous merely because the parties disagree upon the correct interpretation or upon whether it is reasonably open to just one interpretation. *REO Indus., Inc. v. Natural Gas Pipeline Co. of America*, 932 F.2d 447, 453 (5th Cir.1991) (footnotes omitted). The mere disagreement of the parties upon the meanings of contract terms will not transform the issue of law into an issue of fact. *General Wholesale Beer Co. v. Theodore Hamm Co.*, 567 F.2d 311, 313 (5th Cir.1978). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law. Of course, if the contract is ambiguous, summary judgment is deemed inappropriate because its interpretation becomes a question of fact. *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir.1991).

Two sections of the adoption agreement, sections 1 and 3, control the critical inquiry in this case: whether D.E.W. is obligated to make contributions on behalf of non-union member employees?

(1) Adopting of Trust Funds:

(a) Effective as of September 27, 1984, the undersigned Employer adopts the *Southern Texas Laborers' District Council Health & Welfare Trust Fund* for all those employees (the "employees"): (i) who are members of a participating Local Union of the Laborers' International Union of North America, or (ii) who have their wage rate and working conditions established by the collective bargaining agreement negotiated by the Association and the Local Union which established this Fund; it agrees to make contributions on behalf of its employ-

ees; and it agrees to be bound by all the terms, provisions, limitations, and conditions of the Welfare Fund.

(b) Effective as of September 27, 1984, the undersigned Employer adopts the *Laborers' National Pension Fund* for its employees; it agrees to make contributions on behalf of its employees; and it agrees to be bound by all the terms, provisions, limitations and conditions of the Pension Fund.

(c) Effective as of September 27, 1984, the undersigned Employer hereby adopts the *Southern Laborers' District Council Training Program* for its employees; it agrees to make contributions on behalf of its employees; and it agrees to be bound by all the terms, provisions, limitations and conditions of said Training Program.

\* \* \* \* \* \*

(3) The undersigned Employer agrees to contribute to each: the Welfare Fund, the Pension Fund and the Training Program, the contributions required by the then current collective bargaining agreement which is in effect from time to time between L.I.U.N.A. Local 93 and South Texas Contractors Association at the times and in the amounts set forth therein and in accordance with the Trust Agreement establishing each of the Trust Funds as they may be amended from time to time. The Employer further agrees that it is aware of the due dates required for each of the contributions and further agrees that all past due payments shall be subject to the liquidated damages, interest and to all costs of collections, including reasonable attorney's fees, auditor's fees and costs of court as may be required under either the applicable collective bargaining agreement or the Trust Agreement establishing the Trust Fund in question.

The trial court considered the definition of the term "employees" under 1(a) within the agreement and found two groups of covered employees within the definition: 1) employees who are members of a participating Local Union of the Laborers' International Union of North America; and 2) employees who have their wage rate and working conditions established by the collective bargaining agreement negotiated by the Association and Local Union which established the Fund. Moreover, according to the court, because the parties stipulated that they never entered into a collective bargaining agreement, category one constituted the only applicable group. The lynchpin of D.E.W.'s and the district court's position is that section 1(a) controls the entire adoption agreement and requires contributions only on behalf of union members.

■ Section (1), and particularly subsection (1)(a), cannot be the only pertinent part of the adoption agreement when the agreement must be considered as a whole. "Contracts are to be construed in their entirety to give effect to the intent of the parties, considering each provision with reference to the entire contract, so that every clause has some effect, and no clause is rendered meaningless." *REO Indus.*, 932 F.2d at 453 (footnotes omitted). The district court wholly failed to analyze and apply the adoption agreement in its entirety. The district court never addressed the remainder of the contract, in particular section 3. A court cannot disregard as surplusage the succeeding provisions of a contract; it must give effect to all.

The adoption agreement is equally as clear that in section 3 it adopted the contribution provisions of the collective bargaining agreement. The agreement itself provides for contributions in the amount set out in Article XXV. Article XXV provides without any ambiguity that all employees in the defined laborer classifications receive the benefits, including contributions to all of the Funds. What is critical in these provisions of the bargaining agreement which the parties adopted is that "union" and "non-union" are not even mentioned in the provision. There is no distinction made in benefits or contributions between union and non-union employees. We have so held in a case involving the same contribution provisions of this collective bargaining contract. *Laborers' National Pension Fund v. Jaydee Masonry Co.*, 931

F.2d 890 (5th Cir.1991) (table). This is an unpublished per curiam opinion.

■ In essence, the district court relied entirely on the parties' stipulation that D.E.W. had never signed nor authorized a bargaining agent to sign the collective bargaining agreement with the defendants. But the stipulation can have no significance to this issue. An employer can in writing obligate itself to follow portions of a collective bargaining agreement without signing the collective bargaining agreement itself. D.E.W. did not need to have signed the collective bargaining agreement to be bound by its terms because it clearly adopted them in the adoption agreement.

■ The adoption agreement signed by both parties contains at its inception the following statement: "WHEREAS, each of the Trust Agreements establishing the Welfare Fund, the Pension Fund and the Training Program provides that other employers *are not bound* by a collective bargaining agreement requiring contributions to the Trust fund *may adopt* the Trust Funds."

In oral argument D.E.W. placed great weight upon *Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977) and *Culinary Workers and Bartenders Union No. 596 Health and Welfare Trust v. Gateway Cafe, Inc.*, 95 Wash.2d 791, 630 P.2d 1348 (Wash.1981), *cert. denied sub nom. Restaurant Employees, Bartenders & Hotel Service Employees Welfare and Pension Trusts v. Gateway Cafe, Inc.*, 459 U.S. 839, 103 S.Ct. 87, 74 L.Ed.2d 81 (1982). These cases do not avail the appellee. In urging *Schlecht* as authority, D.E.W. incorrectly stated as the Court's ruling an argument that the Court posited but later rejected. Furthermore, the facts in that case are entirely distinguishable. A collective bargaining agreement between a general contractor and the Oregon State Council of Carpenters required that the general contractor pay contributions to certain trust funds with respect to hours of carpentry work performed by employees of a non-signatory subcontractor but not in their behalf. It was urged that such a provision violated § 302(a)(1) of the Labor Management Relations Act. Contrary to D.E.W.'s analysis, the Supreme Court held that it did not. In view of the adoption agreement in the case before us, D.E.W. has adopted as binding certain provisions and is not in the legal status of a "non-signatory" employer as to those provisions.

D.E.W. also relied heavily on *Gateway Cafe* for the proposition that a trust fund cannot .collect contributions on behalf of employees from an employer whose employees were not union members or who did not select the union as its bargaining representative. The case is not at all apposite. The employer signed a collective bargaining agreement for its employees although they were non-union and they had never expressed an interest in collective bargaining. The only expression by the employees was an earlier vote rejecting collective bargaining. The collective agreement set up the payments. Further, it also required all employees either to join the union or face discharge. The court properly held that such contributions would violate federal law as discriminatory.

This Court finds that the provisions in the adoption agreement concerning the collective bargaining agreement make it clear that it is irrelevant that D.E.W. has not signed the full collective agreement. D.E.W. has agreed because its adoption of the contribution provisions of the collective bargaining agreement between Local 93 and the Association that it will pay for all laborers the contributions as mandated by the collective bargaining agreement. Under the agreement, contributions are not limited to those in behalf of union members only. Consequently, adoption of the contribution provisions in the collective bargaining agreement plainly contradicts D.E.W.'s contention that it never incurred an obligation to contribute on behalf of non-union employees.

It might well be the conclusion at this stage of analysis that the contract is ambiguous because of a conflict between the application of section 1(a) and section 3 of the agreement. The validity of this conclusion is destroyed, however, by one strong and persuasive consideration. Except for

the rarest of circumstances, this adoption agreement if it limits contribution to union members only is in violation of federal law. The illegality arises under section 8(a)(3), 29 U.S.C. § 158(a)(3), of the Labor Management Relations Act, Title I, Sec. 101 (the National Labor Relations Act, as amended).

If the contribution plan is limited to union members only and no virtually identical benefits are paid to non-union employees, membership in the union is encouraged. Since Texas is a right-to-work state, advantageous benefits to union members violate the Texas statute as encouraging a union shop which is forbidden by the state. Tex. Civ.St. art. 5207a(3) (West 1987). On the other hand, if there is a separate benefit program for non-union employees which is more favorable to them, membership in the union is discouraged in violation of the law.

Such a discriminatory provision as is present under the interpretation of Sec. 1(a) by the district court is a violation of Sec. 8(a)(3) of the statute and in turn of Sec. 8(a)(1) prohibiting coercive conduct. Within the test of the leading case, *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967), it is " 'inherently destructive' of important employee rights." As the Third Circuit said in *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 623 (3rd Cir.1984): "The absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction."

It follows that the wording of section 1(a) may be inept but its purpose must be one of inclusion of non-union employees rather than exclusion. The coverages definition was copied from the definition of covered employees in the Health and Welfare Fund basic document itself. This document, and its definition, on its face was written originally to cover employers who had signed a collective agreement and had both union and non-union employees covered by bargaining. Inclusion of non-union employees was necessary to make the provision lawful, and it was difficult to define the employees included. The non-union employees had to be those, but only those,

who were counterparts of the union employees in their work. Actually, spelling it out in more detail, the non-union employees had to be those who would be included in the same collective bargaining unit as included the union employees if there had been a bargaining unit.

Yet, if this interpretation is unacceptable, it makes no difference. The provision otherwise is illegal and we are still left with a contract that is unambiguous and requires employer contribution to the funds for the non-union employees doing the same work in the laborer classification as union employees.

As a final contention, D.E.W. asserts that the courts are not the proper forum to raise the issue of legality because the NLRB should deal initially with unfair labor practice claims. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). But *Vaca v. Sipes* merely held that an employee bound by a collective agreement providing a grievance procedure must first invoke and carry through the grievance procedure on behalf of that employee. The case before us does not involve a grievance by employees nor is there an available grievance procedure.

■■■■ D.E.W. omits the application of firmly established Supreme Court precedent. The Supreme Court has concluded that "[t]he authority of the [National Labor Relations] Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1962). *See also Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974); Gorman, Labor Law, Chap. 23, § 4, at 548 (1976). The district court properly exercised jurisdiction over the Funds' § 301 action to recover contributions due. The suit clearly in-

volved a dispute "governed by the terms of the collective-bargaining agreement itself." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 300–301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971).

We find that the adoption agreement on its face, in adopting the fund contributions provisions of the collective bargaining agreement, makes no distinction between union employees and similarly situated non-union employees. In any event, the law requires this result.

### III. CONCLUSION

We hold that the adoption agreement unambiguously incorporates the health and welfare, pension, and training contribution provisions of the applicable collective bargaining agreement. We also hold that the provisions in the signed adoption agreement incorporating parts of the collective bargaining agreement make irrelevant the fact that D.E.W. has not signed the collective agreement. D.E.W. has agreed in writing in a signed adoption agreement that it will make contributions for all laborer employees both union and non-union as provided in the collective bargaining agreement. Indeed, the adoption agreement would violate federal labor law if it did not.

The district court erred in failing to apply the entire adoption agreement, including those portions of the collective bargaining agreement made applicable in terms by Section 3 of the adoption agreement. We reverse and grant summary judgment in favor of the appellants.

REVERSED.

SUMMARY JUDGMENT FOR APPELLANTS GRANTED.