**SHRINERS HOSPITAL FOR CHILDREN, Plaintiff,**

v.

**McCARTHY BROTHERS COMPANY, Defendant.**

No. Civ.A.G–98–500.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 7, 2000.

David Elias Cowen, Douglas W. Poole, McLeod Alexander Powel & Apffel, Galveston, TX, Shriners Hospitals for Children.

John S. McEldowney, Greer Herz & Adams, Galveston, TX, Richard R. Hardcastle, III, Greensfelder Hemker et al., St. Louis, MO, Andrew W. Manuel, Greensfelder Hemker et al., St. Louis, MO, for McCarthy Brothers Co.

W. Kyle Gooch, Canterbury Stuber et al., Dallas, TX, for Federal Insurance Co, Lucia Inc.

Mike Johanson, Johanson & Fairless, Sugar Land, TX, for National Union Fire Insurance Company of Pittsburgh, Pennsylvania, VVP America Inc.

David Keith Cobb, Archer Shrode and Soule, Houston, TX, for Four Seasons Water, Four Seasons Waterproofing, Inc.

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Shriners Hospital for Children ("Shriners Hospital") brings this suit against Defendant McCarthy Brothers Company ("McCarthy") alleging breach of contract of a settlement agreement reached in Texas state court. Now before the Court are Defendant's Motion for Partial Summary Judgment, filed September 24, 1999, and Plaintiff's Motion for Partial Summary Judgment, filed October 29, 1999. For the reasons stated below, Defendant's Motion for Partial Summary Judgment is **DENIED,** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED.**

## I. FACTUAL SUMMARY

This suit stems from certain design and construction defects to the Shriners Hospital for Children in Galveston, Texas that have caused substantial water leakage throughout the facility. Plaintiff sued Defendant for these design and construction defects in Texas state court, and the parties reached a settlement agreement on July 23, 1997, which the state court ultimately approved. The portion of the settlement relevant to this suit provides:

> With regard to the claims made by parties against each other in this litigation, the parties agree as follows:
>
> **Leaks:** At the sole election of Shriners, to be made in writing within 30 days from the date hereof, McCarthy agrees to the following:
>
> i) pay the sum of $25,000 to the Shriners upon receipt of Shriners's election to take a cash settlement hereunder; or,
>
> ii) McCarthy shall identify the cause of and repair all such leaks to the satisfaction of the Shriners. Shriners shall provide McCarthy with a list of all known leaks upon making its election to repair.

McCarthy shall complete all such work no later than seventy-five (75) days from the date of execution hereof. McCarthy shall advise the Shriners of all leaks identified, all designs and plans for all such work, the progress of the work and shall give notice of the completion of the repairs. All repairs must be weather tested before being accepted by the Shriners.

*Def.'s Mot. for Partial Summ.J.Ex. 1 at 2–3.*

Plaintiff elected to proceed under the second option and have McCarthy "identify the cause of and repair all such leaks." Prior to signing the settlement agreement, Plaintiff provided Defendant with a "list of known leaks," and, in accordance with the settlement agreement, Defendant sent a representative to Shriners Hospital to verify the location and assess the cause of the listed leaks. *See* Vandegrift Aff. ¶ 6. Later, in September 1997, Plaintiff sent Defendant a letter containing a revised "list of all known leaks" and requested that four additional leaks not previously included in its first list be reviewed and repaired. *See id.* Within seventy-five days of the signing of the settlement agreement, Defendant supplied Plaintiff with a report prepared by Dr. Rhett Whitlock ("Whitlock Report"), which purportedly identified the cause of the leaks itemized in the "list of all known leaks" and contained a remediation plan to repair them. *See* Kuntz Aff. ¶ 7. Defendant alleges that while it is prepared to perform each of the recommended repairs for the leaks itemized in the Whitlock Report, Plaintiff has balked at permitting Defendant to undertake such repairs. *See id.*

Plaintiff, however, argues that the settlement agreement binds Defendant to repair all leaks for which Plaintiff sued in state court—not just those itemized in the two lists sent to Defendant. A dispute therefore exists because Defendant refuses to repair leaks not included in the itemized lists generated by Plaintiff. Consequently, Plaintiff now brings this suit alleging that Defendant has breached the terms of the July 1997 settlement agreement.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R.CIV.P. 56(c). The burden then shifts to the nonmoving party to establish the exis-

tence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some· metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

B. *Is the Settlement Agreement Ambiguous as to Which Leaks Should Be Repaired?*

■ In Texas, settlement agreements are interpreted according to contract law. *See Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990). Pursuant to general rules of contract construction, the language used by parties to a contract should be accorded a plain grammatical meaning, unless it definitely appears the intention of the parties would thereby be defeated. *See Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). If the contract is worded so that it can be given a certain and definite meaning or interpretation, it is not ambiguous, and therefore a court should construe the contract as a matter of law. *See United States v. Fidelity & Deposit Co.,* 10 F.3d 1150, 1152 (5th Cir.1994) (holding that if the contract can be given a definite and certain meaning or interpretation, the contract is not ambiguous and will be construed by the Court as a matter of law); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983) (mandating that unambiguous provisions appearing in a contract must be given the plain meaning of their terms); *City of Pinehurst v. Spooner Addition Water*

*Co.,* 432 S.W.2d 515, 518 (Tex.1968) (noting that absent ambiguity, "the construction of the written instrument is a question of law for the Court"). Consequently, a fact issue arises as to the proper interpretation of a written contract only if the contract is ambiguous. *In re Fender,* 12 F.3d 480, 489 (5th Cir.1994). An agreement, however, is not ambiguous merely because the parties disagree upon its correct interpretation; rather, it is ambiguous only if both interpretations are reasonable. *See D.E.W., Inc. v. Local 93, Laborers' Int'l Union,* 957 F.2d 196, 199 (5th Cir.1992) (applying Texas law). In this case, both parties agree that the settlement agreement is unambiguous, although both put forth different interpretations. The Court agrees that the clauses at issue are susceptible to only one reasonable interpretation, and therefore the Court must review the contract as a matter of law. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 465 (Tex.1998). (commenting that a contract is not ambiguous merely because the parties advance conflicting interpretations).

■ Because the settlement provision at issue in this case contains no ambiguity, it therefore must be construed in accordance with its plain meaning. From a plain reading of the contractual provision upon which both parties rely, it is clear that the agreement obligates Defendant to repair all leaks that existed at the time the settlement was reached. The applicable provision provides: "McCarthy shall identify the cause of and repair all such leaks to the satisfaction of the Shriners." *Def.'s Mot. for Partial Summ.J.Ex. 1 at 2.* This sentence precedes any mention of Plaintiff providing Defendant with a list of leaks. As the first sentence in the paragraph describing the second option available to Plaintiff, the above quoted passage therefore controls the interpretation of the scope of Defendant's obligation to repair the leaks at the hospital.[1]

---

1. Defendant urges the Court to contort the meaning of "such leaks" by pretending that it refers to the next sentence—"Shriners shall provide McCarthy with a list of all known

leaks upon making its election to repair." In doing so, Defendants argue that "such leaks" refers to language in the next sentence of the

Such a conclusion comports with long-standing English language construction. Perhaps Defendants would find a quick review of basic grammar instructive. From a legal perspective, the word "such" is a "deictic term" that refers to an antecedent. BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 849 (2d ed.1995). In this case, "such" has a clear antecedent. It is found in the language accompanying the heading *"Leaks,"* which includes the introductory sentence "With regard to the claims made by parties against each other in this litigation.... " Each of these statements precedes the disputed "such leaks" phrase. Intuitively, it follows that the leaks which caused Plaintiff to file suit in state court necessarily form the basis for the settlement agreement. Therefore, a review of the entire passage under the heading *"Leaks,"* demonstrates that the term "such leaks" is properly used to reference a previously mentioned category of things, namely the leaks that gave rise to the original litigation.

Applying a strict grammatical meaning also promotes the underlying intention of the parties. Plaintiff reached a settlement with Defendant ostensibly to stop the water leaks allegedly caused by Defendant's poor construction and design of the hospital. The Court's plain reading of the settlement furthers this purpose. *See Reilly,* 727 S.W.2d at 530 ("A court should construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served.... Courts will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." (citations omitted)); *see also Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996) (arguing that courts must presume that parties to a contract intend every clause to have some effect).

On its face, then, the intent of this portion of the settlement agreement was *not* to limit the repair of leaks only to those leaks listed by Plaintiff in either of its letters to Defendant. Instead, the plain language of the provision reveals that Defendant agreed to repair all leaks for which Plaintiffs sued in state court. The term "such leaks" is not ambiguous and cannot reasonably be interpreted to refer only to leaks cited by Plaintiff in its two lists. As a matter of law, the only reasonable interpretation of "such leaks" is that the term extends to all leaks existing at the time of settlement. Accordingly, the Court finds the settlement agreement to be clear and unambiguous and reasonably susceptible to only one meaning. Any alternative interpretation is preposterous.

## III. CONCLUSION

Defendants need to return to reality and begin to look beyond the esoteric rambling of their specious legal arguments. Shriners Hospital provides desperately needed medical care to thousands of horribly injured children without regard to any family's ability to pay; in fact Shriners declines renumeration for any services rendered. In short, Shriners is charity at its apex. The professionals working at Shriners are Samaritans of the highest degree, all of whom the community holds in great esteem. It is therefore completely reasonable for Shriners, an institution of such magnanimous character, to expect that its patients not have to endure rain pouring through windows and ceilings and onto their gauze-wrapped, burned bodies. Requiring anything less is disgraceful to the goodwill Shriners provides to the sick and needy children of this community. The settlement calls for Defendants to fix *each* and *every* leak that existed at the time Plaintiff and Defendant signed the agreement. The children convalescing at Shriners Hospital deserve it; more importantly, the settlement agreement requires it. Accordingly, Defendant's Motion for Partial Summary Judgment is **DENIED** and

agreement, thereby violating the grammatical rule that the word "such" must attach to an antecedent. The Court declines to alter the sentence structure of the agreement so as to placate Defendant.

Plaintiff's Motion for Partial Summary Judgment is **GRANTED.**

Having addressed the seminal issue—interpreting the language in the settlement agreement—the Court remains admittedly perplexed as to why a federal court is being called upon to enforce a settlement reached in state court. Consequently, the Court **ORDERS** lead counsel for all parties to appear before the Court on **February 2, 2000** at **10:30 a.m.** to explain why the state court that approved the settlement agreement is not presiding over this case, and why this case has not reached settlement.

The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**