# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 10, 2012

Lyle W. Cayce
Clerk

No. 11–60145

ROSE OMINSKI,

Plaintiff-Appellant

v.

NORTHROP GRUMMAN SHIPBUILDING, INCORPORATED; PLUMBERS
& STEAMFITTERS LOCAL UNION 436

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:09-CV-755

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Rose Ominski, proceeding pro se, appeals the district court's order granting summary judgment in favor of the Defendants-Appellants Northrop Grumman Shipbuilding, Inc. ("NGS") and Plumbers & Steamfitters Union, Local 436 ("the Union") on Ominski's claims relating to her termination from NGS's pipewelder apprenticeship program. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11–60145

## I

NGS hired Ominski to be a pipe-welder apprentice at its facility in Pascagoula, Mississippi on April 9, 2009. The apprenticeship program required Ominski to complete 640 training hours, three years of classroom work, and 6000 hours of work in NGS's shipyard to become a journeyworker. Three contracts purported to govern aspects of Ominski's employment; they each contain slightly conflicting provisions regarding the duration of Ominski's probationary status and the level of cause required to justify her termination.

A collective bargaining agreement ("CBA") between NGS and the Union provided that the "the Production and Maintenance employers at [NGS's Pascagoula] facility . . . constitute[d] the appropriate bargaining unit" covered by the CBA.[1] Article 12, § 2 of the CBA discusses the probationary period for "new employees covered by this Agreement." It provides, in relevant part: "All new employees covered by this Agreement shall be considered to be on probation for the first sixty (60) days of employment exclusive of testing and preparatory training. During the probation period, the Company may, at its option and without limitation, transfer, lay off, or dismiss such employee."

Soon after Ominski began her apprenticeship, she signed the "Program Registration and Apprenticeship Agreement" ("Apprenticeship Agreement") with the Joint Apprentice and Training Committee ("the Committee").[2] The

---

[1] Ominski conceded in her second amended complaint that she was a production-and-maintenance employee within the Union's bargaining unit. Second Amended Complaint at 2 ("[The Union] was the recognized collective bargaining representative of the bargaining unit of . . . NGS's production and maintenance employees, including Plaintiff, employed in . . . NGS's pipe and training departments, at its Pascagoula facilities."). Accordingly, the CBA governed the terms of Ominski's employment.

[2] The Committee is "composed of an equal number of representatives of [NGS] and the Union." The CBA (1) charges the Committee with making "rules and requirements governing the qualifications, education, and training of all Apprentices" and (2) provides that the "Apprenticeship Program will be continued in accordance with the standards approved by the U.S. Bureau of Apprenticeship, which shall be countersigned by the Union and [NGS]."

2

No. 11–60145

Apprenticeship Agreement stated that the term of Ominski's apprenticeship was 6000 hours and that the probationary period for her apprenticeship was 1000 hours. The Agreement provided that the apprenticeship "may be terminated by either of the parties, citing cause(s), with notification to the registration agency, in compliance with [29 C.F.R. § 29.7(h)]." The Agreement also stated that, "the terms of Apprenticeship standards [are] incorporated as part of this Agreement."

The terms of a third agreement, the "Standards of Apprenticeship," were incorporated as part of the Apprenticeship Agreement and provided for a different probationary period than both the CBA and the Apprenticeship Agreement. Specifically, the Standards contain the following language: "All Apprentices employed in accordance with these Standards shall be subject to a probationary period of 500 hours of employment. During this probationary period, annulment of the Apprenticeship agreement shall be made upon request of either party to the agreement or [the Committee] for good cause."[3]

Before her interview, NGS presented Ominski with a handout on the "Registered Apprenticeship Program." The Handout contained rules governing apprentices' attendance for class and work, but it also stated that the information in the handout was "a general guide" and that "the Bargaining Agreement and Standards of Apprenticeship supersede[] all above information." On the date she began her apprenticeship, she signed a document entitled "Attendance while in Training," in which she acknowledged she understood the following conditions: "You will not be allowed to have more than two excused attendance violations (absences of any type) during your training period. No

---

[3] The Standards also contain language explicitly stating that the terms of the CBA control in the case of any conflict: namely, they provide: (1) "These Standards will not alter any provisions established through collective bargaining"; and (2) "The provisions of these Standards shall be subject to the terms of existing and subsequent bargaining agreements made collectively or separately between . . . Local 436 and [NGS] . . . . In the event of any conflict in any provisions contained herein with any provision of the Basic Labor Agreement, the provisions of the Basic Labor Agreement shall prevail."

No. 11–60145

unexcused lost time allowed." It is not disputed that Ominski missed more than two days of work in the three-and-a-half months of her apprenticeship.

Shortly after Ominski began her apprenticeship, the apprenticeship class met with the Union to discuss the benefits of membership, including representation if a controversy arose with the company regarding their employment. At the meeting, Ominski applied for the additional benefits of Union membership and signed a form that authorized the withdrawal of membership dues from her paycheck. The Union began deducting membership dues from her paycheck sixty days after she began the apprenticeship program. She alleges that the payroll deduction led her to believe that she had obtained Union membership, entitling her to representation.

On July 29, 2009, the day before Ominski was fired, she attended an orientation meeting, which included a discussion among an NGS human resources representative and employees concerning various issues that arise in NGS's shipyard production. At the end of the meeting, Ominski alleges that the human resources representative told the employees present that the company was concerned about their success and "even if they were not members of the Union, they could count on [NGS] for representation." After the meeting, Ominski apparently approached an NGS health and safety analyst to share some of her concerns regarding safety issues in the training center.

On July 3, NGS informed Ominski and a male employee that they were being terminated and provided both with a coded sheet indicating "Code 23 Probationary Release." When Ominski asked why she was being terminated, NGS informed her that she had missed too much time. Ominski sought representation from the Union, hoping the Union would file a grievance on her behalf under CBA procedures. The Union, however, told Ominski that it could not represent her until she had completed her training and worked in the

No. 11–60145

shipyard for sixty days.  The Union later refunded the dues that had been withheld from her paychecks.

Ominski sued NGS and the Union under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  She raised claims for (1) unlawful discharge and wrongful termination in breach of the CBA against NGS; (2) breach of the duty of fair representation against the Union; and (3) negligent misrepresentation against the Union.  NGS moved for summary judgment on Ominski's claims, asserting that (1) Ominksi was an at-will employee when she was discharged and thus could be terminated without cause,[4] and (2) Ominski's negligent misrepresentation claims failed as a matter of law because there was no evidence that she took any action in reliance on her belief that she would be represented by the Union or NGS in the event of a conflict.  The Union joined in NGS's motion.

The district court granted summary judgment for the two defendants and dismissed all of Ominski's claims.  The district court held that NGS did not breach the CBA by firing Ominski because it discharged her during the probationary period of her employment, during which the CBA permitted NGS to terminate employees without limitation.[5]  The district court also granted summary judgment on Ominski's negligent misrepresentation claims, finding that she had failed to raise an issue of material fact regarding whether she relied to her detriment on any statement made by the Union or NGS.[6]

---

[4]  Alternatively, the company contended that it had good cause to fire Ominski due to her violations of the attendance policy she signed when she began her apprenticeship.

[5]  The district court also held that NGS had just cause to terminate Ominski's apprenticeship because she had violated the company's attendance policy.

[6]  The district court also dismissed Ominski's claims for tortious interference with contract against both NGS and the Union.  Ominski waived those claims in her motion for rehearing, and we do not consider them on appeal.

No. 11–60145

Ominski moved for reconsideration, also asserting additional claims of negligent representation against NGS, which primarily related to her supervisor's alleged reassurances that she could "take all the time she needed upon learning of her brother's critical accident." The district court denied reconsideration, holding that it did not have to consider Ominski's new arguments at that stage of the litigation. The district court also held that Ominski's negligent misrepresentation claims lacked merit because she failed to demonstrate her reasonable reliance on any misrepresentation to her detriment. This appeal from the district court's order on summary judgment followed.

## II

Affording Ominski the leeway to which she is entitled as a pro se petitioner, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), Ominski's complaint asserts causes of action (1) charging her employer with a breach of the CBA by wrongfully discharging her without sufficient cause pursuant to § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); and (2) charging the Union with violating its duty of fair representation in mishandling the ensuing grievance pursuant to the scheme of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq. See Edwards v. Sea-Land Serv., Inc.*, 720 F.2d 857, 858 (5th Cir. 1983) (citing *Vaca v. Sipes*, 386 U.S. 171, 186–87 (1967) (discussing hybrid 301/fair representation claims)); *see Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 977 (5th Cir. 1986) (same) (citing *DelCostello v. Teamsters*, 462 U.S. 151, 165 (1983)).

## A

We "review the district court's grant of summary judgment *de novo*, applying the same standard as the district court." *Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432, 437 (5th Cir. 2010) (quoting *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228–29 (5th Cir. 2010)). Summary judgment is

No. 11–60145

appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *Espinoza*, 622 F.3d at 437–38 (quoting *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998)).

## B

Ominski initially asserts that the district court erred by granting summary judgment for NGS on her claim that the company wrongfully terminated her in breach of the CBA. Ominski contends that the district court erred by finding that she was a probationary employee under Article 12 of the CBA at the time of her termination. Instead, she asserts that, as an apprentice, the specific provisions of her Apprenticeship Agreement, as modified by the incorporated Standards of Apprenticeship, determined the duration of her probationary status. Because the Standards of Apprenticeship provide that an apprentice's probationary period is 500 hours, she maintains that she was no longer a probationary employee when she was terminated and, thus, could only be discharged for "just and sufficient cause" under Article 8, § 3 of the CBA.[7]

---

[7] Alternatively, she asserts that even if she were still a probationary employee when she was discharged, the Standards of Apprenticeship provided that her apprenticeship could only be terminated for "good cause." She further disputes the district court's finding that she did not raise a genuine issue of material fact regarding whether NGS had sufficient cause to terminate her due to her attendance record. She contends that the company lacked cause for terminating her because it (1) provided her conflicting attendance policies, (2) failed to inform her that her attendance was a problem, (3) did not enforce its attendance policies uniformly as required of apprenticeship program sponsors by 29 C.F.R. § 30.3(a)(2), and (4) allowed its employee to tell her that missing work to care for her sick brother would be "okay" and that he would "cover for her." Because we hold that Ominski was a probationary employee under the CBA whom NGS could terminate without limitation, we need not address these arguments.

7

No. 11–60145

NGS responds that the district court correctly concluded that Ominski was a probationary employee under the CBA and, thus, that NGS could terminate her employment without cause. Alternatively, it argues that Ominski's attendance violations gave it the requisite cause to terminate her even if it needed "good" or "just and sufficient" cause to do so.

Section 301(a) of the LMRA "allows federal district courts to entertain suits for violation of contracts between an employer and a labor organization," such as the CBA. *United Paperworkers Int'l Union AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1255–56 (5th Cir. 1990). "'[T]he substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.'" *Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp.*, 410 F.3d 204, 213 (5th Cir. 2005) (quoting *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957)). "[S]tate law, if compatible with the purpose of section 301," however, "may be resorted to in order to find the rule that will best effectuate the federal policy." *Champion Int'l Corp.*, 908 F.2d at 1256 (citing *Textile Workers Union*, 353 U.S. at 457).

This dispute turns on whether the district court properly concluded as a matter of law that Ominski was a probationary employee under the CBA who could be terminated without limitation. In interpreting the CBA, "traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies." *Id.* "However, the construction and application of a collective bargaining agreement's terms cannot be strictly confined by ordinary principles of contract law." *Id.* "The provisions of a labor contract may be more readily expanded by implication than those of contracts memorializing other transactions." *Id.*

The parties have identified no federal policy that prevents an employer from terminating its probationary apprentices without limitation. Accordingly,

No. 11–60145

"we apply traditional rules of contract interpretation to determine whether the collective bargaining agreement provides" that Ominski was a probationary employee who could be discharged without limitation, "keeping in mind the flexibility accorded the application of those rules in the context of labor contracts." *Id.*

The interpretation of the CBA is a question of law. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992) (citation omitted). "When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, and the court should attempt to give effect to every contractual provision." *Champion Int'l Corp.*, 908 F.2d at 1256 (citations omitted). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law." *D.E.W., Inc.*, 957 F.2d at 199. But "if the contract is ambiguous, summary judgment is deemed inappropriate because its interpretation becomes a question of fact." *Id.* (citation omitted).

Article 12, § 2 of the CBA provided that "all new employees covered by this Agreement shall be considered to be on probation for the first sixty (60) days of employment exclusive of testing and preparatory training." In her complaint, Ominski admitted that, as a pipewelder apprentice, she was a production-and-maintenance employee within the Union's bargaining unit that is covered by the CBA. Hence, when she was hired, Ominski was a "new employee" under Article 12 of the CBA.

Article 12 provides that "new employees" are on probation until they have worked sixty days after they have completed their testing and preparatory training. Here, on the day NGS terminated her apprenticeship, Ominski had not yet completed the training portion of her apprenticeship; thus, when NGS ended her employment, Ominski was still a probationary employee under the CBA.

No. 11–60145

Accordingly, because Ominski was a probationary employee when NGS terminated her employment, the CBA permitted NGS "at its option and without limitation, [to] transfer, lay off, or dismiss such employee." Thus, to borrow a non-conflicting principle from Mississippi law, Ominski was akin to an at-will employee at the time of her termination under the terms of the CBA. *Solomon v. Walgreen Co.*, 975 F.2d 1086, 1089 (5th Cir. 1992) ("Mississippi has long adhered to the common law rule that 'where there is no employment contract (or where there is a contract which does not specify the term of the worker's employment), the relation[ship] may be terminated at will by either party.'") (quoting *Perry v. Sears, Roebuck, & Co.*, 508 So.2d 1086, 1088 (Miss. 1987)). Under the state's at-will doctrine, an employer can terminate an employee's employment for good reason, a wrong reason, or no reason. *Id.* at 1089. Thus, NGS permissively terminated Ominski under the plain terms of the CBA.[8]

## C

Ominski also challenges the district court's decision to grant summary judgment in favor of the Union on her claim that the Union violated its duty of fair representation. Ominski maintains that she raised a fact issue regarding whether the Union breached its duty of fair representation by failing to act reasonably and in good faith when it decided not to represent her and file a grievance on her behalf pursuant to the procedures of the CBA.

"A union breaches its duty of fair representation by acting in a 'discriminatory, dishonest, arbitrary, or perfunctory manner.'" *Gutierrez v. United Foods, Inc.*, 11 F.3d 556, 559 n.8 (quoting *DelCostello*, 462 U.S. 151 at 164). "The doctrine imposes an obligation on the exclusive bargaining representative 'to serve the interests of all members [of a designated bargaining unit] without hostility or discrimination toward any, to exercise its discretion

---

[8] We need not address whether NGS had cause to terminate Ominski's apprenticeship under the CBA.

No. 11–60145

with complete good faith and honesty, and to avoid arbitrary conduct.'" *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 289 (5th Cir. 1988) (quoting *Vaca*, 386 U.S. at 177. However, "a union does not breach its duty of fair representation by rejecting an employee's interpretation of the collective bargaining agreement unless the union's interpretation is itself arbitrary or unreasonable." *Id.* at 291.

We hold that the Union did not unreasonably interpret the CBA to classify Ominski as a probationary employee whose apprenticeship could be terminated by NGS without limitation. Nor did the Union unreasonably conclude that NGS terminated Ominski's apprenticeship for a legitimate reason. The company provided the Union with (1) the attendance policy signed by Ominski, which only permitted her two excused absences and no unexcused lost time during her training, and (2) with undisputed evidence that Ominski had violated both provisions of the attendance policy. Accordingly, the district court properly concluded that Ominski failed to raise a genuine issue of material fact regarding whether the Union violated its duty of fair representation by acting unreasonably and in bad faith when declining to process her grievance request.

**D**

Ominski also appeals the district court's dismissal of her Mississippi law negligent misrepresentation claims against both NGS and the Union. In her second amended complaint, Ominski claimed that she reasonably relied on the Union's negligent misrepresentation that she had union representation when she reported certain safety violations to an NGS safety supervisor. In her motion for reconsideration of the district court's summary judgment order, she asserted several claims of negligent misrepresentation against NGS, primarily relating to her supervisor's alleged reassurances that she could "take all the time she needed upon learning of her brother's critical accident."

To establish a negligent misrepresentation claim under Mississippi law, a plaintiff must establish the following, by a preponderance of the evidence:

11

> (1) [A] misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007) (citations omitted).

The district court held that Ominski's negligent misrepresentation claim against the Union failed as a matter of law because Ominski presented no evidence that she took any action in reliance on her belief that she would have Union representation in the event of a conflict with NGS. We agree. The only action that Ominski allegedly took in reliance on her belief that she had union representation was expressing safety concerns to an NGS safety officer. But when asked at her deposition whether she expressed the safety concerns because she had been told that she would have representation, Ominski responded, "Not necessarily, no." Further, she testified that she had no evidence that the safety officer told anyone else at NGS about her safety concerns. Accordingly, Ominski failed to raise a fact issue regarding whether she reasonably relied to her detriment on the Union's alleged misrepresentation that she would have Union representation.[9]

---

[9] Because a motion to alter or amend a judgment under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (citation omitted), Ominski has waived her negligent representation claims against NGS. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

No. 11–60145

**E**

Lastly, Ominski contends that NGS violated the equal opportunity standards contained in 29 C.F.R. § 30.3, which require sponsors of qualifying apprenticeship programs to "[u]niformly apply rules and regulations concerning apprentices, including but not limited to, . . . imposition of penalties or other disciplinary action."  Because Ominski has not alleged that she was terminated because of her "race, color, religion, national origin, or sex," the classifications that the equal opportunity standards protect, *see* 29 C.F.R. § 30.3, we decline to hold that NGS violated the equal opportunity standards by discharging a probationary apprentice for violating an attendance policy—even if, as Ominski alleged, other apprentices might have violated that policy more seriously.[10]

**III**

For these reasons, we affirm the district court's order granting summary judgment in favor of NGS and the Union.

---

[10] Accordingly, we need not address Ominski's assertion that the district court erred by denying her motion to compel NGS to produce discovery relating to other apprentices' attendance records.  Even had she proven that other apprentices missed more work, she would not have established a violation of the equal opportunity standards absent an allegation of discrimination.

13