# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1506

_____

| | | |
|---|---|---|
| Carpenters Fringe Benefit Funds of Illinois; United Brotherhood of Carpenters and Joiners of America, Local 410 and Local 166, | * * * * * | |
| | * | Appeal from the United States |
| Plaintiffs - Appellees, | * | District Court for the |
| | * | Southern District of Iowa. |
| v. | * | |
| | * | |
| McKenzie Engineering, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  December 17, 1999

Filed:  June 20, 2000

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and WEBB,[*] District Judge.

_____

LOKEN, Circuit Judge.

McKenzie Engineering Company is a marine construction firm based in Fort Madison, Iowa, that repairs bridges, docks, and dams on the Mississippi River.  A

_____

[*]The HONORABLE RODNEY S. WEBB, Chief Judge of the United States District Court for the District of North Dakota, sitting by designation.

union contractor, McKenzie is party to "pre-hire" collective bargaining agreements with most of the craft unions whose members perform marine construction work on the Mississippi. The Carpenters Fringe Benefit Funds of Illinois (the "Funds") administers pension and welfare benefit trust funds for the United Brotherhood of Carpenters and Joiners (the "Carpenters"). Triggered by work assignment disputes between McKenzie and two Carpenters local unions, the Funds conducted an audit of McKenzie's payroll records and concluded that unpaid contributions totaling $49,160.83 were owing under collective bargaining agreements between the Carpenters and McKenzie. In this lawsuit, the Funds sue to recover unpaid pension fund contributions under ERISA,[1] and the Carpenters locals sue to recover unpaid union dues and other contributions under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

After a bench trial, the district court granted judgment against McKenzie for nearly all the contributions claimed in the Funds audit, plus liquidated damages, audit costs, interest, and attorney's fees. McKenzie appeals, raising a variety of issues. We conclude the Funds failed to prove that the applicable collective bargaining agreements required McKenzie to pay the amounts claimed in the audit, and the Carpenters failed to exhaust remedies under those agreements. Accordingly, we reverse.

---

[1]The Funds sue under § 515 of ERISA, 29 U.S.C. § 1145, which provides:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

"The liability created by [§ 1145] may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to [29 U.S.C. § 1132]." Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547 (1988). If successful, the Funds recover the unpaid contributions plus prejudgment interest, liquidated damages, and attorney's fees. See § 1132(g)(2).

# I. Background.

Over the years, McKenzie signed a series of one-page documents (each entitled "Memorandum of Agreement") under which it agreed with the Carpenters' Northwest Illinois & Eastern Iowa District Council to be bound by collective bargaining agreements between the District Council and employer associations operating within the geographic jurisdiction of the District Council. Carpenters Local 410 serves a territory including Keokuk, Iowa, and is a member of the District Council. Carpenters Local 166 serves a territory including Rock Island, Illinois, and is a member of the District Council. In April 1994, McKenzie signed a collective bargaining agreement with Local 410 (the "Local 410 Agreement"). There is no comparable agreement between McKenzie and Local 166, but McKenzie does not dispute plaintiffs' contention that a Memorandum of Agreement incorporates by reference a collective bargaining agreement that covers Local 166's territory and contains the same relevant terms and conditions as the Local 410 Agreement. Therefore, we will look to the specific terms of the Local 410 Agreement in resolving the entire dispute.

The Keokuk Dispute. In 1995 McKenzie was awarded a contract to repair an icebreaker protecting a dam at Keokuk. McKenzie's initial work crew included two operating engineers, one boilermaker, and four carpenters who were members of Local 410. After some months, the work was behind schedule, and McKenzie's president, Robert McKenzie, blamed the four carpenters on his crew. After complaining to Local 410's business agent, McKenzie fired the four, telling the business agent, "You go your way, and I'll go my way." McKenzie replaced the four carpenters with non-union workers from Iowa Job Services and finished the Keokuk project on schedule in the fall of 1996. Meanwhile, Local 410 filed an unfair labor practice complaint with the National Labor Relations Board. The Board concluded that McKenzie had unlawfully repudiated the Local 410 Agreement, and we affirmed. See McKenzie Eng'g Co. v. NLRB, 182 F.3d 622 (8th Cir. 1999).

The Quad Cities Dispute. In late 1996, McKenzie was awarded a contract to repair the Crescent Bridge, a railroad bridge spanning the Mississippi between Rock Island and Davenport, Iowa. As work began, Local 166 claimed the right to the carpenter work on the project. Still smarting from his fight with Local 410 in Keokuk, and wanting to use some of the Keokuk crew for this project, Robert McKenzie met with the business agent for Local 150 of the International Union of Operating Engineers (the "Operating Engineers"). McKenzie and Local 150 signed a collective bargaining agreement covering the Crescent Bridge project. McKenzie then assigned the work to Local 150, which in turn issued Operating Engineers work permits to the members of McKenzie's crew. In response, Carpenters Local 166 picketed the site and filed unfair labor practice charges with the Board. Those charges have not been finally resolved.

The Claims at Issue. The Funds and Carpenters Local 410 commenced this action in January 1997. Carpenters Local 166 later joined the suit in an amended complaint. All claims are for breach of the applicable collective bargaining agreements. In the amended complaint, the Funds claim that McKenzie failed to make contractually required contributions for employees "within the territorial and occupational jurisdiction" of Local 410 and Local 166. Local 410 and Local 166 assert additional claims for unpaid contributions to union benefit funds, such as Local 410's apprenticeship training fund, and for McKenzie's alleged failure to remit union dues it was obligated to withhold. At trial, plaintiffs quantified these claims through the Funds' audit of McKenzie payroll records. We discuss the audit in detail in Part III of this opinion. But first we must resolve McKenzie's contention that the Local 410 Agreement did not apply to the Keokuk project.

## II. The Scope of the Local 410 Agreement.

McKenzie argues the Local 410 Agreement did not apply to the Keokuk project because that Agreement expressly covered only "Commercial Work." McKenzie explains that the construction industry and its craft unions generally classify work as

-4-

residential, commercial, or highway and heavy. The Keokuk project involved highway and heavy work, and Article I Section 4 of the Local 410 Agreement expressly excluded "work under Highway and Heavy, Residential and Millwright contracts." Therefore, that Agreement did not apply to the project. The district court rejected this contention. The NLRB rejected it in concluding that McKenzie committed an unfair labor practice when it repudiated the Local 410 Agreement by firing all the carpenters working on the Keokuk project. In affirming the NLRB, another panel of this court termed McKenzie's contention "barely plausible." McKenzie Eng'g, 182 F.3d at 626.

We have no difficulty agreeing with these consistent rulings. During the period in question, McKenzie was not a party to a collective bargaining agreement between the Carpenters and highway and heavy contractors in the Keokuk area. Thus, the Local 410 Agreement was the only collective bargaining agreement incorporated by reference in the April 1994 Memorandum of Agreement signed by McKenzie and by Local 410 on behalf of the District Council. Prior to November 1995, when Robert McKenzie fired all carpenters on the Keokuk project and claimed that no collective bargaining agreement governed that work, McKenzie had made contributions to the Funds for the hours worked by Local 410 members in accordance with the Local 410 Agreement. In these circumstances, we agree with the district court that "[t]he above-quoted exclusionary language on which [McKenzie] relies does not apply here, because [McKenzie] was not a party to a Highway and Heavy Agreement in Iowa."

### III. The Plaintiffs' Specific Claims.

Because collective bargaining agreements between McKenzie and Carpenters Locals 410 and 166 applied to the Keokuk and Crescent Bridge projects, the Funds may sue under ERISA to recover unpaid contributions mandated by those agreements, and the local unions may sue for unpaid union dues and benefit contributions not covered by ERISA. The remaining (and more difficult) issues are whether the Funds

proved their monetary claim, and whether the unions may recover without exhausting their contractual grievance/arbitration remedies.

**A. The Funds' Claim for Contributions.** Under ERISA § 515, the Funds may collect only those contributions that McKenzie is contractually obligated to pay. See DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653-54 (2d Cir. 1994). The Local 410 Agreement obligated McKenzie to contribute specified amounts to the Funds "for each hour worked by the employees covered by this Agreement." The contract does not expressly define the term "employees covered by this Agreement," and related provisions are ambiguous. For example, the "Work Jurisdiction" section of the Agreement provides:

> It is agreed that the jurisdiction of work covered by the Agreement is provided for in the C[h]arter Grant issued by the American Federation of Labor to the United Brotherhood of Carpenters and Joiners of America and Lathers.

The Charter Grant was not made part of the trial record, which leaves us very much at sea. We can confidently assume the Carpenters lay claim to marine construction work traditionally done by members of its union. But as we shall explain, that does not help us resolve this dispute.

ERISA plan trustees may audit an employer's payroll records to verify that required contributions have been paid. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559 (1985). In this case, the Funds' claim for unpaid contributions is based entirely on the report of a certified public accountant who audited McKenzie's payroll and related records. The audit covered the period from April 1, 1994, to December 31, 1997. The auditor determined that contributions are owing for all hours worked by McKenzie employees that were

not reported to any union fringe benefit fund. Note 1 to the report states the auditor's assumption underlying that determination:

> Since we could not verify the work performed by any of these individuals, we have included all employees not reported to a union fringe benefit fund as unreported hours due [to the Funds].

In other words, the Funds claim a right to contributions for all hours worked by such employees during this entire period, regardless of the kind of work they did, whether they worked on the Keokuk or Crescent Bridge projects or some other project, and even if they are not participants or beneficiaries of the Funds. McKenzie argues the Funds may not properly assume that all hours worked on all projects were "covered by" the Local 410 Agreement, except hours for which McKenzie contributed to another union's pension fund. In the circumstances of this case, we agree.

In support of its theory that the auditor properly included all hours for which McKenzie made no contribution to any union fund, the Funds cite a series of Ninth Circuit cases which held that collective bargaining agreements with the Operating Engineers required the employers to make pension fund contributions for all hours worked by covered employees, even though part of that work was laborer or salaried executive duties. See Waggoner v. C & D Pipeline Co., 601F.2d 456, 458-59 (9th Cir. 1979), followed in Waggoner v. Dallaire, 649 F.2d 1362, 1369 (9th Cir. 1981), and Burke v. Lenihan, 606 F.2d 840, 841 (9th Cir. 1979). However, in those cases, the court simply enforced a labor management adjustment board's interpretation of an ambiguous collective bargaining agreement. Here, the Local 410 Agreement is equally ambiguous, but we have no interpretation by a contractual dispute-resolution board on which to rely. Moreover, the issue here is whether certain employees are covered by the Local 410 Agreement, not whether some of a covered employee's hours should be excluded from coverage.

In the district court, the Funds also relied on cases noting that it is an unfair labor practice to limit ERISA plan contributions to union members. See D.E.W., Inc. v. Local 93, Laborers' Int'l Union, 957 F.2d 196, 202 (5th Cir. 1992). That principle may be relevant in deciding whether an employer owes fund contributions for the non-union members of a single union's bargaining unit. But in this case, McKenzie entered into pre-hire collective bargaining agreements with multiple craft unions whose claimed work jurisdictions frequently overlap. Each of those unions is a recognized bargaining agent under the National Labor Relations Act, whether or not it represents a majority of McKenzie's employees on a particular project. See 29 U.S.C. § 158(f). In this situation, there is no basis to assume that *every* employee on *every* McKenzie project was "covered by [the Local 410] Agreement." Thus, the auditor's assumption that McKenzie owes pension contributions *to the Funds* (as opposed to another union's pension fund) for every hour worked by an employee for whom no contribution had been made was contractually unwarranted.

The evidence presented at trial confirms the many fallacies in the Funds' calculation of the amount of unpaid contributions:

1. The audit report lists 188 "unreported" hours in Local 166's territory for 1994. Work on the Crescent Bridge project took place in 1997. There is nothing in the record establishing that these 188 unreported hours related to work covered by a Carpenters collective bargaining agreement.

2. The audit report lists 1,166 unreported hours in Local 410's Keokuk area for the months of March through October 1995, *before* McKenzie fired the four Local 410 carpenters. Trial testimony established that, for small projects such as those at issue, McKenzie's work crews often consisted of members of various craft unions, and each member of the crew was expected to do any and all types of work necessary to complete the project. Therefore, even assuming all 1,166 hours were spent working on the Keokuk project, nothing in the record explains why McKenzie owes

contributions to the Funds for these hours, as opposed to owing contributions to another union's pension fund, or to no fund at all.

3. For the period after November 1, 1995, when McKenzie fired the four carpenters on the Keokuk project, the audit report lists unreported hours in Local 410's territory for more than a dozen McKenzie employees. Nothing in the record establishes that all these employees worked on the Keokuk and Crescent Bridge projects. To the extent McKenzie employed workers on other projects during this time frame, the record will not support a finding that McKenzie's pre-hire collective bargaining agreements with the Carpenters required McKenzie to assign this work to members of the Carpenters, as opposed to another craft.

4. The record establishes that Local 410 supplied only four of the seven initial craft union members to the Keokuk work crew. (As previously noted, the crew included two operating engineers and a boilermaker.) To the extent that unreported hours after November 1, 1995, reflect work on the Keokuk project, nothing in the record establishes that it was all work initially assigned to carpenters and therefore "covered by [the Local 410] Agreement." Robert McKenzie testified that many of the Keokuk workers continued to perform the same types of work that Local 410's members performed before November 1, 1995. But that does not prove all the work belonged to Local 410, given the evidence that each member of McKenzie's work crews performed a variety of tasks, including tasks within the traditional work jurisdiction of other craft unions.

5. Finally, the audit report lists 3,137.5 unreported hours in Local 410's territory for 1997, after the Keokuk project was completed. Many of these hours were worked on the Crescent Bridge project by employees working under a collective bargaining agreement between McKenzie and the Operating Engineers. McKenzie assigned that work to Operating Engineers Local 150. Carpenters Local 166 claimed at least some of the work, but it declined to invoke the applicable jurisdictional dispute procedures

under its collective bargaining agreement. We have two problems with including these unreported Crescent Bridge hours in the Funds' claim. First, although the auditor testified he excluded all hours reported to another union's pension fund, documentary evidence reflects, and the Funds do not deny, that the audit report includes 436 hours worked by three employees in March 1997 for which McKenzie made contributions to an Operating Engineers pension fund. The district court clearly erred in including these hours in its calculation of contributions owed the Funds.

Second, we conclude the record will not support a finding that any Crescent Bridge work was covered by a collective bargaining agreement with the Carpenters, as opposed to the Operating Engineers. The Funds argue we should ignore McKenzie's collective bargaining agreement with the Operating Engineers because McKenzie sought out that agreement after Carpenters Local 166 had claimed the work. In our view, it is irrelevant to this case that McKenzie and Local 150 needed to sign a collective bargaining agreement addendum before McKenzie assigned the Crescent Bridge work to Local 150. McKenzie had an ongoing relationship with the Operating Engineers in its home territory of Fort Madison and Keokuk; it was certainly free to expand that relationship to include a project in the Quad Cities territory. McKenzie wanted to staff the Crescent Bridge crew with workers who had successfully completed the Keokuk project. Local 150 was willing to cover those workers under its collective bargaining agreement, using a work permit mechanism. On this record, McKenzie was contractually free to assign the Crescent Bridge work to either union, or part of the work to each union. Any union aggrieved by that assignment could invoke the inter-union jurisdictional dispute procedure, which results in a final work assignment decision prospectively binding on McKenzie. See generally NLRB v. Radio & Television Broad. Eng'rs Union, 364 U.S. 573 (1961). Because Local 166 did not invoke that procedure, the Funds are not entitled to contributions for work assigned to members of a competing union within the jurisdiction of that union.

Finally, the Funds argue that the district court's finding as to contributions owing should be upheld under the ERISA principle "that once the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed." Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir. 1988). We disagree. First, there is no issue here as to the accuracy of McKenzie's records. The problem arises because of assumptions the Funds made in interpreting those records. Second, McKenzie has come forward with evidence establishing that the auditor's assumptions were unfounded. This left the Funds with an unremedied failure of proof.

For the foregoing reasons, we conclude the Funds failed to prove that the audit report as modified by the district court establishes a claim for contributions contractually owed by McKenzie under collective bargaining agreements with the Carpenters and its local unions.[2]

**B. The Local Unions' Claims for Breach of Contract.** The Funds audit reported that McKenzie owes $1,997.23 to Local 410 for unpaid contributions to its apprenticeship training fund, and that McKenzie owes $141.08 to Local 166 for unpaid contributions that are labeled Industry, Apprentice, Safety, and Work Dues in the report. At trial, there was no testimony justifying these amounts. It appears the auditor levied these charges for each "unreported" employee hour used to calculate the pension

---

[2]We note that our decision rejecting the claim for contributions to the Funds is narrow. The NLRB has determined that McKenzie committed an unfair labor practice in firing four Local 410 carpenters from the Keokuk project. The Board's compliance proceedings, which are not yet complete, will no doubt result in a back pay award for those employees, and that award may well include pension benefit contributions to the Funds on their behalf. Unlike the Funds' overbroad claim in this case, that type of award would clearly be consistent with McKenzie's contractual obligation to make contributions for work "covered by [the Local 410] Agreement."

contributions allegedly owed to the Funds. For the reasons already explained, the bare report is insufficient to establish breaches of the collective bargaining agreements.

In addition, another factor precludes recovery on these claims. The Local 410 Agreement contained a typical provision calling for arbitration of "disputes involving the interpretation or application of the terms of the Agreement." The district court held that the Funds are entitled to sue under ERISA without exhausting this contract remedy. McKenzie does not challenge this ruling, which is consistent with another provision in the Local 410 Agreement creating separate contract remedies for the Funds and their trustees. However, McKenzie argues that the local unions' distinct § 301 claims are barred by their failure to exhaust the contract's arbitration remedy. The district court did not consider this legal issue, which we review *de novo*.

There is a strong presumption that collective bargaining agreement disputes are arbitrable. See generally United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Conceding that their claims fall within the scope of the arbitration clause, the local unions argue they were relieved of their contractual duty to arbitrate when Robert McKenzie repudiated the Local 410 Agreement by telling Local 410's business representative, "you go your way, and I'll go my way." We disagree. McKenzie's actions may have amounted to a total breach of the contract, but that does not decide the issue. "Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach." Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers Int'l, 370 U.S. 254, 262 & n.9 (1962); see Vaca v. Sipes, 386 U.S. 171, 185 (1967); 6A ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1443 (1962). There was no evidence warranting a finding that McKenzie repudiated the contract's remedial provisions. On cross examination, Robert McKenzie was asked whether, as of November 1, 1995, he considered McKenzie "no longer bound" by the Local 410 Agreement. He replied:

A.  No.  I just – it was at a point in the [Keokuk project] contract where I needed to proceed with my work.  His people weren't working.  I had to resume work somehow, so I was just attempting to facilitate so I could get my contract done, which I'm under contract to do.

On this record, Local 410 had insufficient reason to assume that McKenzie -- a long-standing union contractor -- would refuse a demand to arbitrate the dispute over the scope of the Local 410 Agreement.  Local 166 had even less reason to assume that a demand to arbitrate its Crescent Bridge dispute would be futile.  Thus, the district court erred in summarily rejecting McKenzie's exhaustion defense to the local union claims. See Mautz & Oren, Inc. v. Teamsters Local No. 279, 882 F.2d 1117, 1126-27 (7th Cir. 1989).

The judgment of the district court is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.