# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3185
_____

Donald Kern; William Grimm, as Trustees of the Plasterers & Cabinet Makers
Health Fund

*Plaintiffs - Appellants*

v.

Goebel Fixture Co.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 10, 2014
Filed: August 28, 2014

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Two trustees of the Plasterers and Cabinet Makers Health Fund (the "Fund")
brought this action asserting claims under § 301 of the Labor Management Relations
Act ("LMRA"), 29 U.S.C. § 185(a), and § 515 of the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1145, to collect unpaid benefit contributions

allegedly owed by Goebel Fixture Co. ("Goebel"). The district court[1] granted summary judgment on all claims because the governing Trust Agreement unambiguously required contributions only for employees "represented by the Union," and it was undisputed that the employees in question were not "represented by the Union." The Trustees appeal dismissal of their ERISA claim. Reviewing the grant of summary judgment *de novo*, we agree with the district court that the Trustees' contractual claim fails on the merits and therefore affirm.

## I.

The Fund is a multi-employer health and welfare plan created and regulated under the LMRA and ERISA. The Fund is governed by The Second Restated Agreement and Declaration of Trust ("Trust Agreement") between the Minnesota Wall & Ceiling Contractors Association and five local unions, including Local 1865 of the United Brotherhood of Carpenters and Joiners (the "Union"). Article IV, Section 4.1, provides that each Employer "shall make prompt contributions or payments to the Trust Fund . . . in the amount and according to the terms provided in the applicable [CBA] between the Employer . . . and the Union," and that "[e]ach Employer shall be responsible only for the contributions payable by him/her on account of Employees covered by him/her." Article I, Section 1.1(a), defines the term "Employer" to mean a member of the Contractors Association "who is bound by a collective bargaining agreement [CBA] with the Union which . . . provides for the making of payments to the Trust Fund with respect to employees represented by the Union." Article I, Section 1.4(a), defines "Employee" to mean an employee "represented by the Union and working for an Employer . . . with respect to whose employment an Employer is required to make contributions into the Trust Fund."

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

For many years, Goebel has manufactured retail fixtures and cabinetry at a facility in Hutchinson, Minnesota. Employees working certain jobs at that facility have been represented by the Union or its predecessors. The current CBA between Goebel and the Union was signed on July 14, 2010, and binds the parties from February 1, 2010, until May 31, 2015. Article I, Section 1, provides that "all employees of the Employer under this Agreement" in enumerated job classifications shall be members of the Union. Article 20, Section 1, provides that Goebel shall "provide group health insurance benefits for each eligible regular full-time employee and his or her dependents . . . . through the Plasterers and Cabinet Makers Insurance Trust in accordance with the provisions of the Agreement and Declaration of Trust and Plan Document of that Trust." Article 20, Section 2, provides that Goebel shall remit monthly premiums to the Fund "[f]or each employee covered by the Agreement" who has completed an employment probationary period. It is undisputed that Goebel is responsible for and has made contributions to the Fund on behalf of its Hutchinson employees who are members of the Union.

On March 1, 2010, while the CBA was being negotiated, Goebel acquired another production facility in Minnetonka, Minnesota, a suburb of Minneapolis some fifty miles from the Hutchinson facility. The Union has never represented employees of the Minnetonka facility who have similar job duties to Hutchinson employees who are members of the Union. During the negotiations, Goebel advised Plaintiff Trustee Donald Kern, acting in his capacity as Union business agent, that Goebel planned to operate a nonunion shop in Minnetonka. The CBA included no explicit reference to the Minnetonka facility or its employees. After Goebel acquired the facility, the Minnetonka employees were subject to different work rules and were paid different wages and benefits than Goebel's Hutchinson employees. Goebel has provided health insurance to the Minnetonka employees under a company-sponsored health plan. Goebel has never made contributions to the Fund on behalf of its Minnetonka employees, nor has any Minnetonka employee claimed benefits from the Fund.

This state of affairs remained unchallenged from March 2010, when Goebel began operations at the Minnetonka facility, until September 2011, when the Fund's plan administrator completed an audit of Goebel's contributions that revealed no contributions on behalf of the Minnetonka employees. The Trustees brought this action to recover delinquent Fund contributions for the Minnetonka employees allegedly required under the terms of the CBA and the Trust Agreement. The Trustees' seek $516,063.90 in delinquent contributions plus liquidated damages. The Trustees explain that their prior belief that the Minnetonka employees were not covered was based upon Goebel's misrepresentation to Kern that it planned to run the Minnetonka facility as a separate legal entity, a practice known as "double-breasting."

Ruling on cross motions for summary judgment, the district court concluded that the CBA and Trust Agreement unambiguously provide that Goebel was not responsible for contributions for the Minnetonka employees because they were not "represented by the Union." Turning to the question "whether they *should have been* represented by the Union -- i.e., whether under the terms of the CBA, Goebel was required to make the Minnetonka employees become members of the Union," the court concluded that this question was beyond its jurisdiction because whether the Minnetonka employees were "covered" employees under the ambiguous CBA is "a representational issue [that] can be raised only before the NLRB [the National Labor Relations Board] and falls within its exclusive or primary jurisdiction," quoting Construction Workers, Local 682 v. Bussen Quarries, Inc., 849 F.2d 1123, 1125 (8th Cir. 1988). This appeal followed.

## II.

**A.** There is a long-recognized jurisdictional tension between the jurisdiction granted federal courts in § 301 of the LMRA over "[s]uits for violation of [CBAs]," 29 U.S.C. § 185(a), and the jurisdiction granted the NLRB in § 9(b) of the National Labor Relations Act to "decide in each case whether, in order to assure employees the

fullest freedom in exercising their rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof," 29 U.S.C. § 159(b). In § 301 suits brought by unions alleging employer violations of CBAs, we have repeatedly held that § 9(b) deprives federal courts of jurisdiction to decide representational questions that require determination of the appropriate collective bargaining unit. See Bussen Quarries, 849 F.2d at 1124-25; Local Union 204, IBEW v. Iowa Elec. Light & Power Co., 668 F.2d 413, 419-20 (8th Cir. 1982).

The decision not to exercise § 301 jurisdiction in a particular case out of deference to the NLRB's expertise and authority is not an absolute. It must be exercised consistent with federal labor law policies. See United Ass'n of Journeymen, Local 342 v. Valley Eng'rs, 975 F.2d 611, 613-14 (9th Cir. 1992). As we defined the relevant standard in Iowa Electric, the jurisdictional line turns on whether "the major issues to be decided . . . can be characterized as primarily representational or primarily contractual," 668 F.2d at 419, quoted in ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 964 (8th Cir. 2011). Here, in dismissing the Trustees' § 301 claim, the district court concluded that "[t]he question that the parties ask the Court to resolve can be characterized in no other way than 'primarily representational.'" The Trustees do not appeal dismissal of the § 301 claim.

**B.** In 1980 ERISA amendments, Congress enacted § 515, adding "strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent [ERISA plan] accounts." Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 547 (1988). Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a

-5-

collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Another ERISA provision, 29 U.S.C. § 1132(e)(1), gives federal courts jurisdiction over suits by plan trustees to recover contributions owed under § 515. Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc., 591 F.3d 576, 579-80 (7th Cir.), cert. denied, 560 U.S. 940 (2010). On appeal, Goebel argues that the NLRB's primary jurisdiction to decide representational issues deprived the district court of jurisdiction to consider the merits of the Trustees' § 515 claim. We conclude the district court properly dismissed this contractual claim on the merits.

The remedy provided by § 515 "is limited to the collection of 'promised contributions' and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make . . . contributions constitutes a violation of the [National Labor Relations Act]." Advanced Concrete, 484 U.S. at 549. Moreover, an employer's contractual commitment in a CBA to make employee benefit contributions to an ERISA plan need not be based upon union membership or be limited by NLRA representational principles. An employer may -- and in some cases must -- agree to make contributions on behalf of employees who are not members of the union. See D.E.W., Inc. v. Local 93, Laborers' Int'l Union, 957 F.2d 196, 202 (5th Cir. 1992). Thus, if a trustee's claim for ERISA plan contributions "relates to contract interpretation, as it does in this case, the district courts have the ability to decide the issue even if the issue relates to a determination of the collective bargaining unit." Cent. States, Se. & Sw. Areas Pension Fund v. Old Dutch, Inc., 968 F. Supp. 1292, 1296-97 (N.D. Ill. 1997); see Moriarty v. Svec, 164 F.3d 323, 333-35 (7th Cir. 1998); Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir.), cert. denied, 498 U.S. 932 (1990); Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489, 519 (5th Cir. 1982), cert. denied, 464 U.S. 932 (1983). As the Seventh Circuit observed in Martin v. Garman Constr. Co., 945 F.2d 1000, 1006 (7th Cir. 1991), cert. denied, 502 U.S. 1122 (1992), "the principles of

contract interpretation and federal law at stake [in a § 515 suit to recover delinquent contributions] do not require initial adjudication by the [NLRB]."

Although we have not previously addressed Goebel's assertion that the NLRB's primary jurisdiction deprives a district court of jurisdiction to consider the merits of a trustee's § 515 claim, it is telling, if not controlling, that we resolved the merits of comparable claims under traditional principles of contract law in Carpenters Fringe Benefit Funds v. McKenzie Eng'g, 217 F.3d 578, 582-85 (8th Cir. 2000), and in Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1348-53 (8th Cir. 1990), cert. denied, 502 U.S. 811 (1991).

**C.** Turning to the merits of the Trustees' contractual claim, the Trustees argue the district court erred in denying their cross motion for summary judgment because the CBA's requirement that Goebel make contributions to the Fund for "all employees of the Employer under this Agreement" unambiguously included the Minnetonka employees. Alternatively, the Trustees argue, if the CBA was ambiguous in this regard, we must remand for consideration of extrinsic evidence to resolve the ambiguity under contract law principles.

These contentions simply ignore the district court's explicit basis for its grant of summary judgment dismissing the Trustees' contract claim -- the provisions in the *Trust Agreement* providing that Goebel is only obligated to make Fund contributions on behalf of "Employees," a term defined as including "[a]ny employee *represented by the Union* and working for an Employer as defined herein, and with respect to whose employment an Employer is required to make contributions into the Trust Fund" (emphasis added). Like the district court, we read the Trust Agreement to unambiguously require that an employee is actually represented by the Union at the time the Fund claims delinquent contributions were owed on behalf of that employee. As it is undisputed that the Union did not "represent" the Minnetonka employees at the times in question, the Trustees failed to demonstrate the Fund was entitled to the

contributions they seek under the terms of the Trust Agreement. See McKenzie Eng'g, 217 F.3d at 582; DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653-54 (2d Cir. 1994).

We agree with the district court that this case is dramatically different than Independent Fruit & Produce Co., where we upheld § 515 claims for delinquent contributions to a multi-employer ERISA fund because the contributions at issue were required by the unambiguous terms of the governing CBA. 919 F.2d at 1351-53. First, the CBA at issue in this case does not unambiguously entitle the Fund to contributions on behalf of the Minnetonka employees. More important, the Trust Agreement unambiguously provides that contributions are required only for employees who are "represented by the Union." Because the Trust Agreement is the ERISA plan whose contractual provisions the Trustees are suing to enforce, its unambiguous limitation on when contributions are owing takes precedence over any ambiguity lurking in the CBA. See Ind. State Council of Roofers Health & Welfare Fund v. Adams Roofing Co., 753 F.2d 561, 564 (7th Cir. 1985). Therefore, we need not remand for consideration of extrinsic evidence to resolve the ambiguous CBA, as the Seventh Circuit needed to do to resolve the contribution claim for one employee at issue in Moriarty, 164 F.3d at 331-32, 335.

The judgment of the district court is affirmed.

_____