# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2365

———————————————

John Nesse, as Trustees of the Minnesota Laborers Health and Welfare Fund and as Trustees of the Minnesota Laborers Pension Fund; Tim Mackey, as Trustees of the Minnesota Laborers Health and Welfare Fund, as Trustees of the Minnesota Laborers Pension Fund, as Trustees of the Minnesota Laborers Vacation Fund, and as Trustees of the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; Tammy Braastad, as Trustees of the Minnesota Laborers Vacation Fund; Fred Chase, as Trustees of the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; Mark Ryan, as Trustees of the Minnesota Laborers Employers Cooperation and Education Trust; Dave Borst, as Trustees of the Minnesota Laborers Employers Cooperation and Education Trust; the Minnesota Laborers Health and Welfare Fund; the Minnesota Laborers Pension Fund; the Minnesota Laborers Vacation Fund; the Construction Laborers', Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; the Minnesota Laborers Employers Cooperation and Education Trust

*Plaintiffs - Appellees*

v.

Green Nature-Cycle, LLC

*Defendant - Appellant*

——————

Appeal from United States District Court
for the District of Minnesota

——————

Submitted: May 12, 2021
Filed: August 5, 2021

——————

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

The trustees of five multi-employer fringe benefit funds sued Green Nature-Cycle, LLC under § 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145; and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). The Trustees alleged that Green Nature failed to contribute to the funds on behalf of its non-union employees and sought to collect from Green Nature the delinquent contributions, interest, costs, and attorney's fees. The parties filed cross-motions for summary judgment, and the district court[1] granted summary judgment in favor of the Trustees, which included ordering Green Nature to pay the Trustees' attorney's fees. Green Nature appeals the grant of summary judgment in favor of the Trustees and the award of attorney's fees. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Green Nature, a largely seasonal landscaping business, served as a subcontractor for Minnesota Department of Transportation (MnDOT) landscaping projects from April to June 2017. In order to work with unionized prime contractors, Green Nature signed a Collective Bargaining Agreement (CBA). The CBA required Green Nature "to contribute every month . . . for each hour worked by all Employees covered by this Agreement" to five multi-employer fringe benefit funds (the Funds): Pension; Health and Welfare; Vacation; Education, Training and Apprenticeship; and the Minnesota Laborers-Employers Cooperation and Education Trust (LECET). R. Doc. 51-1, at 8.

_____

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

The CBA was entered into by a multi-employer committee of landscaping contractors, which included Green Nature, and the Laborers' District Council of Minnesota and North Dakota on behalf of its affiliated Local Unions. The CBA does not define the term "Employees." Article 2.4 of the CBA states that the CBA "applies to all Landscape Work conducted in the State of Minnesota." R. Doc. 51-1, at 2. The CBA contains a "recognition clause," wherein Green Nature "recognize[d] the Union as the exclusive representative of all Employees performing work within the jurisdiction of the Union for the purpose of collective bargaining with respect to . . . fringe benefits, hours of employment and other conditions of employment." R. Doc. 51-1, at 3. The CBA also contains a "union shop" clause, requiring "each Employee covered by this Agreement" to become a union member within eight days of employment. R. Doc. 51-1, at 3. Additionally, Article 16 requires Green Nature "to contribute every month . . . [fringe benefits] for each hour worked by all Employees covered by this Agreement." R. Doc. 51-1, at 8. Article 5.2 requires Green Nature "to pay the wage rates including benefits as listed herein for all Employees covered under this Agreement from the first day of employment, *regardless of whether or not such Employees are members of the Union*." R. Doc. 51-1, at 4 (emphasis added). Article 16.5(i) states:

> The parties to this Agreement acknowledge that the provisions of this Agreement establishing rates of pay, wages, all hours of employment and other terms and conditions of employment, *including fringe benefits*, apply to Employees employed in job classifications within the jurisdiction of the Union from the first date of employment, REGARDLESS OF WHETHER OR NOT SUCH EMPLOYEES ARE MEMBERS OF THE UNION.

R. Doc. 51-1, at 10 (italics added; capitalization in original). Article 16.4 provides in relevant part: "There shall be no requirement that Employees sent to work outside the scope of this Agreement be paid fringes, nor shall the Employer be required to duplicate fringe contributions." R. Doc. 51-1, at 9. Finally, Article 16.1 provides

that "[t]he fringe benefit contributions are to be paid on one check and submitted to the agent of the Funds as designated by the Trustees."[2] R. Doc. 51-1, at 9.

In 2017, one of Green Nature's employees reported to Jacquelyn Klein, an MnDOT labor compliance investigator, that Green Nature was not paying him for work on MnDOT projects. Klein then audited Green Nature's compliance with Minnesota prevailing wage laws. During the audit, Klein reviewed employee timecards, check stubs, and fringe-related documents. Because Green Nature failed to cooperate with the audit, Green Nature employees provided the documents to Klein. It is undisputed that Klein never reviewed or even received the CBA during the audit and that this was consistent with her normal practice.

Klein ultimately determined that Green Nature had failed to pay both its union and non-union employees wages and fringe benefits as required by Minnesota prevailing wage laws. Because Green Nature still refused to pay its employees, Klein directed the general contractor to pay the employees their delinquent wages and fringe benefits. Klein directed the general contractor to send a check to the Funds for monies owed to union employees. By contrast, Klein directed the general contractor to send monies owed to non-union employees to her, and she then forwarded the monies directly to the non-union employees. Green Nature received a credit on its audit invoice for the payments made by the general contractor.

In addition to contacting MnDOT, Green Nature employees contacted their union business agent to report Green Nature's failure to pay for work on MnDOT projects. The Trustees commenced a CBA-authorized audit. The Trustees requested that Green Nature produce payroll and employment records, but Green Nature failed to produce such documents.

Following the attempted CBA audit, the Trustees sued Green Nature under § 515 of ERISA, 29 U.S.C. § 1145; and § 301 of the LMRA, 29 U.S.C. § 185(a).

_____

[2]The parties agree that the Trustees' agent is Zenith American Solutions.

-4-

The Trustees alleged that Green Nature failed to contribute to the Funds on behalf of its non-union employees as required by the CBA. The Trustees sought to collect unpaid contributions, interest, costs, and attorney's fees. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the Trustees. The district court concluded that the CBA required Green Nature to contribute to the Funds on behalf of non-union employees; that the MnDOT audit findings did not collaterally estop the Trustees from seeking the delinquent contributions; and that the Trustees' recovery of delinquent fund contributions would not require Green Nature to "duplicate fringe contributions" in contravention of the CBA. The district court separately ordered Green Nature to pay approximately $66,000 for the Trustees' attorney's fees, as well as "double interest" and costs. Green Nature appeals the grant of summary judgment in favor of the Trustees and the award of attorney's fees, but not the award of "double interest" and costs.[3]

II.

Green Nature argues that the district court erred in granting summary judgment in favor of the Trustees. Green Nature contends that the CBA did not require it to contribute fringe benefits for non-union employees, and even if it did, an award of delinquent contributions in this litigation would impermissibly require Green Nature to "duplicate fringe contributions" in view of the contributions already received from the MnDOT audit. Alternatively, Green Nature argues that the MnDOT audit collaterally estops the Trustees from "relitigating" the amount of fringe benefits owed for non-union employees. "We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to [Green Nature] as the nonmoving party and drawing all reasonable inferences in [its] favor." Roebuck v. USAble Life, 992 F.3d 732, 735 (8th Cir. 2021).

---

[3]Green Nature also argued to the district court that the CBA was not in effect during the relevant time period. The district court rejected this argument, and Green Nature does not raise it on appeal.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 was Congress's response "to the problem created when an employer defaults upon its obligation to fund a multiemployer defined-benefit pension plan . . . . Section 515 'evinces a strong congressional desire to minimize contribution losses and the resulting burden such losses impose upon other plan participants.'" Flynn v. R.C. Tile, 353 F.3d 953, 958 (D.C. Cir. 2004) (citations omitted). ERISA authorizes a plan fiduciary, like the Trustees, to seek recovery of unpaid contributions. 29 U.S.C. § 1132(g)(2); see also Twin City Pipe Trades Serv. Assoc., Inc. v. Wenner Quality Servs., Inc., 869 F.3d 672, 678-79 (8th Cir. 2017).

## A.

Green Nature first argues that the CBA unambiguously does not require Green Nature to make fringe benefit contributions on behalf of non-union employees. A CBA must be construed as a whole with its terms read in context. See Allied Sales Drivers & Warehousemen, Loc. No. 289 v. Sara Lee Bakery Grp., 746 F.3d 342, 346 (8th Cir. 2014). The employer and union's interpretation of a CBA is "irrelevant if the written agreement unambiguously expresses something other than what they intended." Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1349 (8th Cir. 1990). "[A]n employer's contractual commitment in a CBA to make employee benefit contributions to an ERISA plan need not be based upon union membership . . . . An employer may—and in some cases must—agree to make contributions on behalf of employees who are not members of the union." Kern v. Goebel Fixture Co., 765 F.3d 871, 875 (8th Cir. 2014).

The district court concluded that the CBA unambiguously required Green Nature to contribute to the Funds for non-union employees. We agree. Articles 5.2 and 16.5(i) indicate that fringe benefit contributions are required regardless of union membership. And the phrase "regardless of whether or not such Employees are members of the Union" in Articles 5.2 and 16.5(i) indicates that "Employee" is not synonymous with "union member." See R. Doc. 51-1, at 4, 10. Additionally, it is undisputed that the non-union employees performed "Landscape Work . . . in the State of Minnesota." See R. Doc. 51-1, at 2. And while the Eighth Circuit has not addressed this issue, at least four other circuits—the Fourth, Sixth, Ninth, and Tenth—have found that a CBA's designation of a union as "the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and nonunion members." See Teamster's Loc. 348 Health & Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318 (6th Cir. 1984); see also Clark v. Ryan, 818 F.2d 1102, 1105 (4th Cir. 1987); Audit Servs., Inc. v. Rolfson, 641 F.2d 757, 760-61 (9th Cir. 1981); Manning v. Wiscombe, 498 F.2d 1311, 1313 (10th Cir. 1974). Also, the "union shop" clause's directive that "each Employee covered by this Agreement" become a union member indicates that "Employees covered by this Agreement," R. Doc. 51-1, at 3, "may exist prior to and apart from union-member employees." See Teamster's Loc. 348, 749 F.2d at 318 (reaching this conclusion based on union shop clause with similar language). Interpreting the term "Employees" to mean only "union-member employees" "effectively interprets the union shop clause to require union members to become union members, and renders the clause meaningless." See id. at 318-19. And "[n]o terms [in a CBA] should be meaningless." Sara Lee Bakery Grp., 746 F.3d at 346.

Green Nature asserts that the district court erroneously ignored the "industrial common law" when construing the CBA. "The essence of the CBA is derived not only from its express provisions, but also from the industrial common law. The industrial common law includes the past practices of the industry and the shop, as well as the parties' negotiating history and other extrinsic evidence of their intent." Bureau of Engraving, Inc. v. Graphic Commc'ns Int'l Union, Loc. 1B, 164 F.3d 427, 429 (8th Cir. 1999) (citing United Steelworkers v. Warrior & Gulf Navigation

Co., 363 U.S. 574, 581-82 (1960)).  Citing Klein's testimony regarding her experience as an MnDOT auditor, Green Nature contends that the industry practice is for non-union employees to be paid fringe contributions directly rather than through the benefit funds.  We will assume arguendo that Klein's testimony is competent evidence of industry practice.  But when construing a CBA, "[e]xtrinsic evidence may not be considered 'for the purpose of showing that the parties intended to make an agreement which is inconsistent with the unambiguous words of their written contract.'"  Sara Lee Bakery Grp., 746 F.3d at 347 (alteration in original) (citation omitted).  As explained above, the CBA unambiguously required Green Nature to make fringe benefit contributions for non-union employees.  The district court did not err in declining to consider extrinsic evidence in the face of the CBA's plain language.

Green Nature also contends that, in the context of a CBA, "the phrase 'Employees covered by this Agreement' plainly means the employees engaged in collective bargaining: employees that are members of the union," and that other courts have "observed" this plain meaning.  Appellant Br. 31.  But none of the cases Green Nature cites actually adopted Green Nature's interpretation.  Only one case held that the phrase "Employees covered by this Agreement," R. Doc. 51-1, at 3, "d[id] not include non-union owners or supervisors," but ultimately the court allowed the funds to recover contributions for work performed by non-union owners and supervisors because "other sections of the CBAs reserved covered work for union-member employees and . . . [the employer] breached the CBAs to the extent it permitted non-union owners and supervisors to perform covered work."  Trs. of the Minn. Ceramic Tile & Allied Trades Ret. Fund v. Legacy Tile & Marble, Inc., No. CIV. 06-2965 (JNE/SRN), 2008 WL 624120, at *6 (D. Minn. Mar. 4, 2008).  We find Legacy Tile inapposite because the CBA in this case does not limit covered work to union employees.  Unlike the cases Green Nature cites, the Sixth Circuit's reasoning in Teamster's Local 348 is persuasive because it addresses similar contractual provisions and the same legal question: whether the CBA required contributions for non-union employees.  Thus, the district court correctly concluded

that the CBA unambiguously required fringe benefit contributions for non-union employees.

## B.

Green Nature next argues that even assuming the CBA requires fringe contributions for non-union employees, an award of delinquent contributions to the Trustees would amount to requiring Green Nature to "duplicate fringe contributions" in contravention of the CBA. It contends that the non-union employees already received their fringe benefits via direct payment after the MnDOT audit. We disagree. Notwithstanding the audit, Green Nature never paid anything *to the Funds* for fringe benefits for its non-union employees, and the Funds have never received monies representing fringe benefit contributions for non-union employees as required by the CBA. Rather, benefits were paid directly to the non-union employees after the audit. But paying benefits directly to employees is not a substitute for Green Nature's obligation under the CBA to pay benefit contributions directly to the Funds. See, e.g., Audit Servs., 641 F.2d at 761 (holding that direct benefit payments "do[] not excuse the obligation to make contributions to the funds"). This is because direct payments "in lieu of contributions to the Fund do nothing to remedy the harm to the Fund from the non-payment of . . . contributions due under the CBA." Flynn, 353 F.3d at 961. The non-payment of contributions "does harm to the . . . fund[s], which rel[y] upon contributions (*and the investment income thereon*) from all signatory employers to finance the defined benefits due to beneficiaries." Id. (emphasis added); see also Audit Servs., 641 F.2d at 761 ("The funds are established for the benefit of all employees covered by [the funds'] language and are depleted by the amount which the [employer] ha[s] refused to contribute.").[4] Because the audit-ordered direct payments were not contributions

---

[4]Unrebutted evidence shows that, at least with respect to vacation benefits, the Funds pay a dividend based on interest earned from pooling all fund contributions together, in addition to the defined benefit. Thus, a direct payment of (at least some) fringe benefits is factually not the same as a distribution of those benefits from the Funds because the direct payment does not include a dividend.

paid to the Funds as required by the CBA, there have been no "fringe contributions" that the district court's award would duplicate. Thus, the CBA's non-duplication provision is not implicated.[5]

Green Nature also insists that paying fringe benefits for non-union employees directly to the Funds would result in a windfall for the Funds in violation of ERISA. It claims that record evidence establishes that the non-union employees are not eligible for and would never receive any fringe benefits from the Funds. This contention is both irrelevant and unsupported by the evidence. It is irrelevant because, as explained above, Green Nature's failure to contribute to the Funds reduces the total contributions—and investment income thereon—available to pay benefits for *all* employees covered by the Funds. The Trustees were entitled and expected "to have those funds at hand for payout of benefits on behalf of other employees, including employees of other employers who are members of the multiemployer [benefit funds]." Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1109 (3d Cir. 1996); see also Flynn, 353 F.3d at 961. Even if the non-union employees did not miss out on anything extra by receiving a direct payment, the Funds were nonetheless deprived of bargained-for monies that could have earned interest and been paid out as (higher) dividends to *other* employee beneficiaries. See Flynn, 353 F.3d at 961.[6]

---

[5]Green Nature contends that this case is unique because the direct payments to non-union employees were made at the direction of a state agency. We are not persuaded that this fact changes the outcome for two reasons. First, a state agency has no authority to order an employer to violate federal law. ERISA requires employers to contribute to multi-employer plans "in accordance with the terms and conditions" of the plan or collective bargaining agreement. 29 U.S.C. § 1145. In the audit proceedings, Green Nature could have notified the auditor about its obligations under the CBA and federal law to make contributions to the Funds, but it did not. Second, the state agency's audit would not have occurred but for Green Nature's failure to pay its employees. Green Nature should not be able to use the state audit as a shield from liability for its breach of the CBA and federal law.

[6]The cases Green Nature cites in support of its argument, see Appellant Br. 23, are inapposite and unpersuasive. Those cases arose in the context of proceedings

Additionally, Green Nature's argument is not supported by the evidence. Contrary to Green Nature's assertions, the testimony cited in its brief does not state or even suggest that non-union employees are ineligible for the fringe benefits. By contrast, there is testimony that fringe benefits are paid out to employees regardless of whether they are union members. Thus, we find that an award of delinquent fringe benefit contributions would not improperly require Green Nature to "duplicate fringe contributions."

## C.

Green Nature argues in the alternative that the MnDOT audit collaterally estops the Trustees from seeking delinquent fringe contributions for Green Nature's non-union employees in this lawsuit. It contends that the audit conclusively resolved the issue of what amounts were owed to the Funds for fringe benefits for non-union employees. The Trustees counter that the requisite elements of issue preclusion are not met here, and in the alternative, that issue preclusion is not a valid defense to an action to collect delinquent contributions owed under a CBA. See Indep. Fruit, 919 F.2d at 1349 (explaining that courts "recognize only two defenses to a collection action: that the pension contributions are themselves illegal or that the collective bargaining agreement is void"). We need not determine whether issue preclusion could ever be a valid defense to a collection action because the substantive elements of issue preclusion are not satisfied.

---

before the National Labor Relations Board where the aggrieved parties were individual employees, not the benefit funds. As acknowledged by Flynn, Audit Services, and Central Pennsylvania Teamsters, the Trustees are in a different position than individual employees and in fact *do* suffer a loss when employers fail to contribute directly to the funds because, in part, the Trustees represent the interests of numerous employee beneficiaries. Moreover, the primary case Green Nature cites also held that "the companies must contribute to the union plans to the extent necessary to make employees *absolutely* whole and to ensure the plans' undiminished viability." Grondorf, Field, Black & Co. v. N.L.R.B., 107 F.3d 882, 888 (D.C. Cir. 1997) (emphasis added) (remanding the case to allow the companies the opportunity to make that showing).

Collateral estoppel, or issue preclusion, "precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment." Falgren v. Bd. of Teaching, 545 N.W.2d 901, 905 (Minn. 1996) (en banc) (citation omitted). For a prior agency determination to have preclusive effect in a subsequent federal court proceeding, three initial criteria must first be satisfied: (1) the agency was acting in a judicial capacity; (2) the agency resolved issues of fact properly before it; and (3) the parties had an adequate opportunity to be heard. See B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 148 (2015); Plough ex rel. Plough v. W. Des Moines Cmty. Sch. Dist., 70 F.3d 512, 515 (8th Cir. 1995). If those criteria are met, federal courts must then determine the preclusive effect the state court, applying state law, would give the agency decision. Plough ex rel. Plough, 70 F.3d at 516. Under Minnesota law, five elements must be met for issue preclusion to apply to an agency decision: (1) "the issue to be precluded must be identical to the issue raised in the prior agency adjudication"; (2) "the issue must have been necessary to the agency adjudication and properly before the agency"; (3) "the agency determination must be a final adjudication subject to judicial review"; (4) "the estopped party was a party or in privity with a party to the prior agency determination"; and (5) "the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." Falgren, 545 N.W.2d at 905 (citation omitted). "However, collateral estoppel is not rigidly applied. 'As a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged.'" Id. (citations omitted).

Even if the three initial criteria were met, the five issue preclusion elements are not. First, the issue to be precluded is not identical to the issue raised in the audit. The audit addressed whether Green Nature owed its employees wages and benefits under Minnesota prevailing wage laws, see Minn. Admin. R. 5200.1000. Here, the issues are whether the CBA, governed by federal law, requires Green Nature to make fringe benefit contributions on behalf of non-union employees *to the Funds*, and second, the amounts (if any) Green Nature must pay to the Funds for delinquent contributions owed under the CBA. Second, even if the audit addressed the CBA

issues and those issues were properly before the agency, the CBA issues would not have been necessary to the agency's determination of the prevailing-wage issues.

Finally, the Trustees were not parties to or in privity with any parties to the audit. Green Nature equates the Trustees with the Union. But the Union was not a party to the audit. And under the LMRA and ERISA, trust funds established for the benefit of employees are separate entities from labor organizations. N.L.R.B. v. Constr. & Gen. Laborers' Union Loc. 1140, 577 F.2d 16, 20 n.6 (8th Cir. 1978). Thus, even if the Union were a party to the audit, the Trustees were not because they are separate from the Union.

Green Nature's argument that the Trustees are in privity with a party to the audit also fails. Green Nature suggests that the Trustees are in privity with the Union or the employees whose wages and benefits were addressed in the MnDOT audit. Assuming the Union or the employees could even be considered "parties" to the audit, we disagree. Non-contractual privity may exist for (1) "those who control an action although not parties to it"; (2) "those whose interests are represented by a party to the action"; (3) "successors in interest to those having derivative claims"; and (4) those who are "so identified in interest with another that [they] represent[] the same legal right." Rucker v. Schmidt, 794 N.W.2d 114, 118 (Minn. 2011) (citations omitted). Green Nature identifies no evidence that the Trustees controlled the audit or that they are successors in interest. And the Trustees' interests were not represented by either the Union or the employees, nor were the Trustees "so identified in interest with [the Union or the employees] that [they] represent[] the same legal right," see id. (citation omitted), because the Trustees' interests are much broader. The employees whose wages and benefits were addressed in the MnDOT audit are just a subgroup of the total participants in the Funds, and "an individual union's duty extends only to the members of the bargaining unit it represents," Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc., 934 F.2d 987, 989 (8th Cir. 1991) (citing Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 576 (1985)). By contrast, the Trustees have fiduciary obligations to *all* the Funds' participants and beneficiaries. See id.

-13-

Thus, the Trustees were not in privity with any parties to the audit.[7]  Finally, applying preclusion here "would work an injustice on" the Trustees given Green Nature's behavior.  See Falgren, 545 N.W.2d at 905 (citation omitted).  The audit occurred because Green Nature failed to pay its employees; Green Nature did not cooperate during the audit; and even after Klein ordered Green Nature to pay its employees the delinquent wages and benefits, Green Nature failed to do so, causing Klein to turn to the general contractor to pay the employees.  Accordingly, we conclude the Trustees are not collaterally estopped from seeking delinquent fund contributions for non-union employees.  Cf. WCCO Television, Inc., 934 F.3d at 990-91 (holding that trustees' ERISA suit seeking to recover benefit fund contributions was not precluded by prior arbitration award because trustees were not parties to the arbitration and were "not in privity with the Union as a matter of law").

III.

Green Nature also argues that the district court erred in awarding the Trustees attorney's fees.  ERISA mandates an award of "reasonable attorney's fees" when "judgment in favor of the plan is awarded" in an action under § 1145.  29 U.S.C. § 1132(g).  Green Nature does not challenge the district court's legal authority to award attorney's fees.  Rather, Green Nature contends that the litigation was unnecessary, and at a minimum, the fee award should have been reduced due to the Trustees' "partial success."  "We review the district court's award of attorney's fees for abuse of discretion."  Miller v. Dugan, 764 F.3d 826, 830 (8th Cir. 2014).

---

[7]For the first time on appeal, Green Nature argues that the Trustees were in privity because they were a "beneficiary" of the audit.  Green Nature cites no authority in support of this proposition.  Because Green Nature did not make this argument to the district court and does not meaningfully argue the point to this Court, the argument is waived.  See Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 809 F.3d 1018, 1022 (8th Cir. 2016) (appellate court ordinarily does not consider an argument raised for the first time on appeal); Ahlberg v. Chrysler Corp., 481 F.3d 630, 638 (8th Cir. 2007) (points not meaningfully argued on appeal are deemed waived).

Green Nature first argues that the district court abused its discretion in awarding attorney's fees because the litigation was unnecessary and precluded by the MnDOT audit. We disagree. The litigation was not "unnecessary" because the audit did not address or resolve the CBA-related issues. Similarly, for the reasons discussed above, the Trustees were not precluded from bringing this litigation. Thus, we reject Green Nature's argument.

Green Nature next argues that the attorney's fee award should be reduced due to the Trustees' "partial success" in recovering "only" 80% of the amount they originally sought in their complaint. Courts have discretion in making the "equitable judgment" to reduce a fee award to account for "partial success." See Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983). In their complaint, the Trustees sought $29,334.32 in damages from Green Nature for delinquent contributions. After discovery, the Trustees recalculated the amount they believed Green Nature owed, and the district court awarded that amount: $23,489.21. Green Nature cites no binding authority for the proposition that a district court abuses its discretion in declining to reduce an attorney's fee award where the plaintiffs recovered 80% of the damages they originally sought. In fact, we have affirmed a fee award even though the plaintiff received "less than one-tenth of the amount she requested" because "she recovered substantial damages and received some of the benefit sought in bringing the suit." See Allen v. Tobacco Superstore, Inc., 475 F.3d 931, 944 (8th Cir. 2007). Thus, we conclude that the district court did not abuse its discretion in awarding the Trustees attorney's fees and in declining to reduce the amount.

IV.

We affirm the district court's judgment.

_____